[Cite as *State v. Merryman* , 2013-Ohio-4810.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

State of Ohio,                          :

    Plaintiff-Appellee,          :          Case No. 12CA28

    v.                                   :

Richard Merryman,                  :

    Defendant-Appellant.        :          DECISION AND JUDGMENT ENTRY

                                         :          **RELEASED:  10/24/13**

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Peter Galyardt, Ohio State Assistant Public Defender, Columbus, Ohio, for Appellant.

Keller Blackburn, Athens County Prosecutor, and Merry M. Saunders, Athens County Assistant Prosecutor, Athens, Ohio, for Appellee.

_____

HARSHA, J.

    **{¶1}**    Appellant Richard Merryman appeals his conviction upon a guilty plea to one count of kidnapping and two counts of rape.  Merryman contends that the trial court erred when it found him to be competent to stand trial, accepted his guilty plea, denied his motion to suppress his confession, and imposed separate sentences for offenses that should have been merged for sentencing under R.C. 2941.25.

    **{¶2}**    First Merryman argues the trial court abused its discretion in finding him competent to stand trial and that error amounted to a violation of his due process rights. Although everyone who examined Merryman recognized he has some degree of

cognitive impairment, one of the experts concluded he was competent to stand trial. The trial court was free to choose which opinions it found to be more credible, so we cannot say it abused its discretion in crediting the state's experts over that of the defense. And because Merryman was deemed competent, requiring him to stand trial did not violate his right to due process.

{¶3}  Merryman also contends his plea of guilty was involuntary because of his incompetency; and because it accepted an involuntary plea, the court violated his right of due process. The crux of his argument is based upon the opinions of his experts that he was incompetent to stand trial. However, we have already determined the trial court properly found Merryman competent to stand trial in spite of those opinions. It follows that a voluntariness argument based upon those rejected premises must also fail, ipso facto.

{¶4}  Next Merryman argued the trial court erred when it denied his motion to suppress his confession. He bases his argument upon his purported lack of ability to knowingly and voluntarily waive his Miranda rights. However, his efforts at the trial court level to suppress his statement focused entirely upon Merryman's refusal to sign the section of the Miranda form addressing his right to counsel and subsequent questioning by the police officer. Nowhere during the procedure for suppression did Merryman ever raise the issue of his cognitive impairment. Accordingly, he has forfeited the right to raise it here. Nor do we sua sponte consider it as plain error.

{¶5}  Finally, Merryman challenges the imposition of separate sentences for what he concludes are allied offenses of similar import, i.e. kidnapping and rape. He argues every rape includes a kidnapping and there is no evidence he had a separate

animus for each crime. Even if we assume it was possible for Merryman to commit both offenses with the same conduct, we reject his argument because he committed the offenses with separate states of mind. The kidnapping had the separate purpose of removing the victim from a hallway into a nearby bathroom in order to avoid detection during the sexual assault. In light of this separate animus distinct from the desire for sexual gratification present in the rape, we conclude merger was unnecessary.

## I. Background

{¶6} A grand jury issued a three-count indictment against Merryman, charging him with two counts of rape of minors under the age of thirteen and one count of kidnapping. Subsequently, Merryman's counsel filed a motion requesting Merryman be evaluated for competency to stand trial. The court ordered an evaluation of Merryman to determine his status and directed Dr. David Malawista to submit a written report within thirty days. In April 2011 Malawista examined Merryman, determined him to be competent to stand trial, and submitted his report to the court.

{¶7} At the competency hearing in May of 2011 Merryman's counsel requested a continuance so that he could retain his own examiner to evaluate Merryman for competency. On behalf of defense counsel Dr. Jolie Brams examined Merryman in July and August of 2011 and issued a report, which concluded that Merryman was not competent to stand trial.

{¶8} When the competency hearing resumed in February of 2012, the court heard testimony from Dr. Brams, Dr. Malawista, and Margaret Sterling, who was employed by the Tri-County Mental Health and Counseling Services. Sterling provided counseling and assessment services for the Southeastern Ohio Regional Jail where

Merryman was incarcerated. Sterling was called to perform a risk evaluation of Merryman in April of 2011 to determine if he was suicidal and needed psychiatric hospitalization. Sterling determined that Merryman did not need hospitalization. Sterling met with Merryman three more times at Merryman's request, once in May 2011 and twice in November 2011.

{¶9}   In May of 2012, the court issued its order finding Merryman competent to stand trial. Then in June 2012, the trial court held a hearing on Merryman's motion to suppress his confession. Merryman sought to have his confession suppressed on the ground that the officer improperly continued the questioning after he had invoked his right to have an attorney present. Merryman took the stand and testified at the hearing, so the trial court had the opportunity to observe Merryman's demeanor and responses.

{¶10}  In August of 2012, Merryman's counsel filed a motion requesting a second competency hearing due to alleged difficulties he had with Merryman at the suppression hearing. Merryman had retained Dr. James Reardon, who determined that he was not competent to stand trial. Merryman submitted two reports from Dr. Reardon to support his motion for a second competency hearing. After the trial court denied the motion for a second hearing, Merryman decided to plead guilty.

{¶11}  At the change of plea hearing, the court stated that it had reviewed the Reardon reports and that it continued to find Merryman competent to stand trial. The court then proceeded to ask Merryman a series of questions in accordance with Crim.R. 11(C) to ensure that Merryman's guilty plea was made knowingly, voluntarily, and intelligently. Merryman responded clearly and affirmatively to each of the court's questions. After accepting Merryman's guilty plea, the court sentenced him to ten years

to life on each of the three offenses and ordered that they be served concurrently.  This

appeal followed.

## II. Assignments of Error

1. The trial court violated Richard Merryman's right to due process and abused its discretion when it found him competent to stand trial. Fifth and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution; R.C. 2945.37.

2. Richard Merryman was deprived of his right to due process when the trial court accepted an unknowing, unintelligent, and involuntary guilty plea. Fourteenth Amendment, United States Constitution; Section 10, Article I, Ohio Constitution; R.C. 2945.37; Crim.R. 11(C).

3. The trial court erred when it denied Richard Merryman's motion to suppress his confession. Fifth, Sixth, and Fourteenth Amendments, United States Constitution; Sections 10 and 16, Article I, Ohio Constitution.

4. The trial court committed plain error when it imposed separate sentences upon Richard Merryman for offenses that arose from the same conduct, were not committed separately or with a separate animus, and should have been merged for sentencing purposes under R.C. 2941.25. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus; *State v. Underwood*, 124 Ohio St.3d 265, 2010-Ohio-1, 922 N.E.2d 923, ¶31; Crim.R. 52(B).

## III. Competency

{¶12}  In his first assignment of error Merryman contends the trial court

violated his right to due process when it found him competent to stand trial.  A

criminal defendant is presumed to be competent to stand trial and has the burden

of proving his incompetence by a preponderance of the evidence. R.C.

2945.37(G).

## A. Standard of Review

{¶13}  A trial court's decision on competency will not be disturbed absent an

abuse of discretion. *State v. Clark,* 71 Ohio St.3d 466, 469, 1994-Ohio-43, 644 N.E.2d 331.  An "abuse of discretion" requires more than an error of judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Id .* at 470.  Thus, an appellate court will not disturb the trial court's competency determination if the record reveals a rational basis to support the trial court's findings.  See, *State v. Williams*, 23 Ohio St. 3d 16, 19, 490 N.E.2d 906 (1986); *State v. Stewart*, 4th Dist. Gallia No.91CA24, 1992 WL 174699 (July 22, 1992).

## B. Is Merryman Competent?

**{¶14}**  Due process requires a criminal defendant be competent to stand trial. *State v. Berry*, 72 Ohio St.3d 354, 359, 1995-Ohio-310, 650 N.E.2d 433.  A person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.  *State v. Stewart*, 4th Dist. Gallia No. 91CA24, 1992 WL 174699 (July 22, 1992) quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).  Conviction of an accused while he or she is legally incompetent is a violation of due process. *Id.*

**{¶15}**  The United States Supreme Court established the test for competency and requires the court to determine if an accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding –and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).  Ohio has codified the competency test:

A defendant is presumed to be competent to stand trial.  If, after a hearing,

> the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

R.C. 2945.37(G).

{¶16} Under this subjective test, if a defendant is capable of understanding the nature and objective of the proceedings and assisting in the defense, then the defendant is competent to stand trial. A defendant with mental illness or intellectual deficiencies may still be competent to stand trial. "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock,* 28 Ohio St.3d 108, 110, 502 N.E.2d 1016, 1019 (1986). Mental retardation, in itself, is not enough to support a claim of incompetence. *State v. Southerland,* 10th Dist. Franklin No. 06AP-11, 2007-Ohio-379; *State v. Wilder,* 6th Dist. Lucas No. L-06-1321, 2007-Ohio-4186; *State v. Beck,* 1st Dist. Nos. C-020432, C-020499, C-030062, 2003-Ohio-5838, ¶ 12, discretionary appeal not allowed, 101 Ohio St.3d 1470, 2004-Ohio-819, 804 N.E.2d 42. Mentally retarded persons are frequently competent to stand trial. *Atkins v. Virginia*, 536 U.S. 304, 318, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)("Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial.").

{¶17} Based on our review of the competency hearing transcript and the exhibits submitted, we conclude the record contains evidence of both admissible facts and a

logical thought process to support the trial court's finding of competency. Two expert witnesses and a fact witness testified. The two experts gave conflicting testimony and opposite opinions, although both agreed that Merryman was intellectually deficient or mildly mentally retarded with an attachment disorder that may place him on the autistic spectrum. The trial court determined that the opinion of Dr. Malawista, who found Merryman competent, to be more persuasive and credible than the opinion of Dr. Brams, who concluded that Merryman was incompetent.

{¶18}  A review of the record shows that Dr. Malawista had been performing competency evaluations for thirty-five years and had performed hundreds of examinations throughout his career.  Competency Hearing, Transcript. p. 127. He interviewed Merryman early in the proceedings in April 2011, for approximately two and one-half hours, interviewed the jail nursing and corrections staff regarding their observations of Merryman, and spoke to Merryman's counsel. Competency Hearing, Malwista's Report, Exhibit 3, p.1.  He also performed a second evaluation at which he interviewed Merryman for an additional hour and one-half.  Competency Hearing, Transcript. pp. 132-133.  Malawista reviewed voluminous amounts of documentation, including prior evaluations and psychological assessments, as well as Dr. Brams report.  Malawista's report noted Merryman's thought processes  were "mildly impoverished and quite concrete" and that "his thinking was fundamentally logical" and "his expressed thought were at all time relevant to the ongoing flow of conversation." Competency Hearing, Malawista's Report, Exhibit 3, p.3.

{¶19}  In response to Malawista's inquiries about his education level, Merryman responded that he had received a high school diploma while he was a patient at a

residential sex offender program. He reported receiving mostly A's and B's and that

"when things are explained in enough detail, I learn pretty easy."   Malawista concluded

that Merryman "demonstrated that he could read and comprehend fairly complex written

material and do basic math problems."

{¶20}  Malawista was skeptical about Merryman's claims concerning his poor

memory of events, noting that Merryman would claim not to remember certain things,

but "probing inquiry or later related discussions would show he could and did have and

recall the data being sought."  Malawista noted that Merryman's "'memory deficits' were

most pronounced around topics that showed him in an unfavorable light or when he was

trying to impress upon the writer how psychologically impaired he was."  Malawista

Report, Exhibit 3, p.4.

{¶21}  Addressing Merryman's ability to assist counsel, Malawista found that

Merryman had "a sound working relationship with his defense attorney." Merryman told

Malawista that he trusted his attorney and would have no problems working with him.

Malawista also reported that Merryman was able to fully appreciate and understand the

pending charges and understood that if he were convicted he could spend, at a

minimum, decades in prison.  Although at first Merryman denied knowing anything

about the basics of the criminal proceedings, Malawista was able to challenge and

probe Merryman and determine that he possessed the basic knowledge of a criminal

proceeding. Merryman understood the role and neutrality of the judge. He understood

that if he were found guilty at trial he would be sentenced to prison.  He knew that he

should not speak to the prosecutor without his attorney present. He understood the role

of a jury and the role of witnesses at trial. Malawista Report, Exhibit 3, p.6.

{¶22} Merryman was also able to explain basic trial options and strategies such as the decision to testify and the possibility of a bench trial. He explained to Malawista that he believed that his best defense strategy may be to plead not guilty by reason of insanity given his many years of inpatient psychiatric and psychological treatment. When asked about the event that led to his arrest, Merryman was initially very guarded. However, Malawista reported that after careful questioning, Merryman "provided a reasonable account of the alleged crimes" and indicated he was willing to discuss it with his defense counsel when asked. Merryman also knew that he was to behave in a quiet, attentive and polite manner during his trial. Malawista reported that he had no reason to doubt Merryman's ability to behave appropriately during trial based on Merryman's behavior during the, at times stressful, two and one-half hour interview. Malawista Report, Exhibit 3, p. 7.

{¶23} Counselor Sterling's testimony, while not extensive, supports Malawista's opinion that Merryman understood the nature of the proceedings against him and had the capacity to assist in his own defense. Sterling had contact with Merryman on four different occasions prior to the competency hearing. She spoke to Merryman approximately one hour during the first meeting and approximately thirty minutes each of the other three times they met. Sterling testified that Merryman told her he could be in jail for life, but that he did not believe the charges against him warranted a life sentence because he had not committed a murder. He was aware of another inmate with similar charges who received a six-year prison term. Merryman thought a similar sentence would be appropriate for him. He also informed Sterling he was very anxious about the competency hearing and needed to be found incompetent so that he could return to his

father or placed in a group home. Sterling testified that she thought Merryman could be mentally retarded, but that she had worked with other mentally retarded individuals and found that they were able to relate basic facts. Merryman's responses to her questions were coherent and responsive. Competency Hearing Transcript. pp. 118-125.

**{¶24}** Dr. Brams determined that Merryman was incompetent primarily because he would be unable to assist his attorney with his defense. Brams Report, Exhibit 1, p. 12. Despite her findings, she reported that "Mr. Merryman seems to be able to understand the general adversarial nature of the proceedings against him, and the roles and responsibilities of the various individuals involved in the court system." Brams Report, Exhibit 1, p. 9.

**{¶25}** Brams also reported concerns with Merryman's ability to recall information from long term memory and believed that this would interfere with his ability to adequately relate information to his attorney. However, Brams further stated that Merryman's memory problems did not extend to matters or experiences that are related to his oppositional or sexual history. Brams Report, Exhibit 1, p. 11. Based on Brams's testimony, it would be reasonable for the trial court to conclude that Merryman would not have difficulty recalling and relating events surrounding his arrest on rape charges and conveying that information to his counsel.

**{¶26}** Finally, Brams report shows that Merryman had a basic understanding of the legal proceedings and that he harbored skepticisms and doubts that are occasionally shared by other criminal defendants:

> This defendant has a basic understanding of the legal system. He understand this is an adversarial setting, that his attorney (although in his view is incompetent to do so) is to be of assistance to him, and that he is

facing serious sanctions (although he does not believe that these are valid). He understands that there are concepts such as "discovery," and was able to speak relatively competently regarding this type of information. He also understands that he is being charged with "rape and kidnapping" and understands what this entails (although he does not agree that these are appropriate charges). Thus from a purely factual standpoint, he has a basic understanding of the proceedings against him.

Brams Report, Exhibit 1, p. 12.

**{¶27}** The key distinction between Malawista's and Brams's opinions is the extent to which each expert believed Merryman would be able to assist in his defense. This difference was largely attributed to the marked difference between the manner in which Merryman presented himself to the experts. For example, when Merryman explained to Malawista why he thought the rape charge was inappropriate, he presented a logical and rational analysis of the fact that there was no sexual intercourse, only oral sex, which Merryman believed constituted gross sexual imposition, not rape. Competency Hearing Transcript, p. 142. However, when the same topic was discussed with Brams, Merryman provided her with an incoherent and illogical rationale that tied a constitutional right to freedom of speech with a freedom of behavior that would give him the right to commit the charged offenses.  Brams Report, Exhibit 1, p. 10; Competency Hearing Transcript. p. 94, 96-97.  Faced with these two markedly different presentations, the trial court had to make a determination as to which one presented the more accurate reflection of Merryman's competency.

**{¶28}** When the trial court asked Brams directly how it was possible to decide between the two opposite expert opinions, Brams stated that the court should make the decision based upon the testing data she provided. Competency Hearing, Transcript p. 113.  However, the testing data Brams compiled focused on Merryman's psychological

profile and mild intellectual deficiencies.  A court's focus on competency requires an understanding of the defendant's present ability to understand the nature and objective of the proceedings against him and to assist in the defense. Brams did not ask Merryman about the offense or determine if he could give accurate factual statements about his behavior as it related to the offense. Competency Hearing Transcript. pp. 61-63.  Thus, it was reasonable for the trial court to give less credibility to Brams' opinion and the test data supporting it.

{¶29}  Malawista, on the other hand, believed that the differences between his opinion and Brams could be explained in two ways.  First, Malawista explained that Brams relied more on psychometrics or testing scores to determine competency, while he relied more extensively on direct interviews with the defendant that focused on his understanding of the legal system, the charges, and his relationship with his attorney. Competency Hearing Transcript p. 142 -143.  Second, Malawista noted that Merryman appeared to "look worse over time" as the proceedings moved forward. Malawista examined Merryman in April 2011 within the first thirty days after his indictment was issued. Brams interviewed and tested Merryman in July and August 2011.  Malawista testified that Merryman may have developed an appreciation and understanding over time that it was in his best interest to look bad.  Competency Hearing Transcript p. 142-144.  Thus, one plausible explanation for the marked difference in the manner in which Merryman presented himself to Brams as compared to Malawista was that, as Merryman gained a better understanding of the competency issue, he tried to influence the competency determination in his favor.

{¶30}  As the trier of fact, the trial court was in the position to determine the

credibility of the expert witnesses. The weight to be given the evidence and the credibility of the witnesses are primarily for the trial court as the trier of fact. *State v. Stewart*, 4th Dist. Gallia No.91CA24, 1992 WL 174699 (July 22, 1992) citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E. 212 (1967). The adequacy of the "data relied upon by the expert who examined [the defendant] is a question for the trier of fact." *Id.* "Deference on these issues should be given 'to those who see and hear what goes on in the courtroom.'" *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263 quoting *State v. Cowans*, 87 Ohio St.3d 68,84, 1999-Ohio-250, 717 N.E.2d 298 (1999). A trial court is permitted to disagree with an expert's opinion on competency where the trial court's decision is support by evidence in the record and by the court's own observations of the defendant. *Were,* 118 Ohio St. 3d at 456, 2008-Ohio-2762 at ¶52.

**{¶31}** The trial court's decision shows that the court fully considered the testimony of both Brams and Malawista, as well as the testimony of Sterling. The trial court also reviewed the exhibits admitted at the hearings. The trial court found it significant that Brams did not ask Merryman detailed information about the incident that formed the basis for his criminal charges and that Merryman made "a vastly different presentation to Malawista than he did to Brams." Ultimately, the trial court found that Malawista's opinion was the more credible of the two. Thus the trial court found Merryman competent to stand trial.

**{¶32}** Merryman argues that Malawista's opinion should be entirely discredited based on his statement on cross-examination that, "I don't know why, I, but I think he's competent." Competency Hearing Transcript, p. 181. We do not give much weight to this argument. That statement was made in response to a somewhat obscure line of

questioning from defense counsel that was directed to elicit an answer from Malawista that would pin down the exact point in his mental state that Merryman would move out of the zone of competency and into the zone of incompetency.   Malawista testified that the question was very arbitrary and he had no idea how to answer.   Defense counsel continued to seek a response from Malawista, "Okay, that's that's the abstract, but as Merryman sits here today, how far is he from not being able to do that, based on your evaluations of him?"  Malawista responded in full:

> A ways. He, I mean again, I don't know how to make this any clearer. I don't think he's you know, and [sic] ideal client. I don't think he's unimpaired. He's a way before you reach that level. Is it really far, no. Is it just really one little iota of difference, no I don't think so. But he clearly is impaired. I don't know why, I, but I think he's competent.

Competency Hearing Transcript, p. 180-181.  Given Malawista's earlier response that he had no idea how to answer this line of questioning and his lengthy and credible testimony on direct examination giving his full and complete reasons for his opinion on Merryman's competency, in addition to his written report, we do not find this utterance makes his ultimate opinion totally lacking in credibility.

{¶33}  Merryman also argues that the fact that he was found incompetent in a juvenile court proceeding in 2005 creates a presumption of incompetence and shifted the burden to the State to prove competency in an adult proceeding seven years later. The case cited by Merryman, *State v. Finley,*  2nd Dist. Clark No. 96-CA-30, 1998WL321017 (June 19, 1998), does not support him.  *Finley* is a case in which the court held an initial competency hearing and found the defendant incompetent but capable of being restored to competency within a year.  Later, a second competency hearing occured to determine if the defendant had been restored to competency.  The

defense counsel asserted that because the court had found Finley incompetent earlier in the proceedings, there was now a presumption that she was incompetent. After finding no Ohio law on point, the court reviewed insanity case law and held that the burden shifted to the State in subsequent hearings.

**{¶34}** We do not believe that *Finley* requires a perpetual presumption of incompetence in all future proceedings. The mere fact that Merryman has been deemed incompetent to stand trial in the past when he was a juvenile, does not automatically render him incompetent to stand trial now or create a presumption of incompetency. Years have passed since Merryman's first evaluation. And although the courts have applied R.C. 2945.37 to juvenile cases, they do so in light of juvenile norms rather than adult norms. *In re T.C.*, 4th Dist. Washington No. 09CA10, 2009-Ohio-4325; *State v. Dollar*, 12th Dist. Butler No. CA2012-01-022, 2012-Ohio-5241 (court held that mildly mental retarded adult defendant who had been found incompetent to stand trial six different times as a juvenile offender, was not automatically incompetent to stand trial as an adult and affirmed trial court's finding of competency).

**{¶35}** Finally, we do not believe the court abused its discretion in denying Merryman's motion for a second competency hearing based upon Merryman's behavior at the hearing on his motion to suppress. The trial court had the opportunity to observe Merryman's behavior at the suppression hearing. Merryman testified at the hearing, was subject to cross-examination, and interacted with his counsel. The expert reports prepared by Dr. Reardon focused, like Dr. Brams, on psychometrics. Where the report contained excerpts from actual discussions Dr. Reardon had with Merryman, it showed the Merryman was able to provide responsive, lucid answers concerning the

circumstances surrounding his interrogation.  For example, when asked about whether he thought he would have been released had he requested an attorney, Merryman responded, "They weren't going to let me leave until I told them what they wanted to hear from me – I tried to get an attorney but they wasn't giving me that – I had to do what they told me to do. I was scared, yeah! That they might beat me up and make me talk – I just wanted to get out of there."  Reardon Report, July 3, 2012, p. 6. Based upon the fact that the trial court had an opportunity to observe Merryman's behavior and had the benefit of Malawista's earlier testimony and report, we cannot say that the trial court abused its discretion in refusing to hold a second competency hearing.

**{¶36}**  We conclude the trial court's finding of competency was based on evidence given by the state's witnesses and consideration of the multiple evaluations. The record contains a rationale basis to support the trial court's decision that Merryman was competent to stand trial.  Accordingly, we overrule Merryman's first assignment of error.

IV. Merryman's Plea

**{¶37}**  In his second assignment of error, Merryman argues that he did not enter his guilty pleas voluntarily, knowingly, and intelligently. The basic tenets of due process require that a guilty plea be made "knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 1996-Ohio-179, 660 N.E.2d 450 (1996). Failure on any of these points "renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *Id*

**{¶38}**  The crux of Merryman's argument that his pleas were not voluntary is based on his assertion that he was incompetent to make the plea because Dr. Bram's

and Dr. Reardon's reports find him incompetent to stand trial. However, we have already concluded that the trial court properly found Merryman competent to stand trial in spite of expert testimony to the contrary. Therefore, we reject Merryman's underlying premise that he was not competent to enter a guilty plea. It follows, ipso facto, that his "voluntariness" argument is meritless.

{¶39} Although Merryman does not specifically contend that the trial court failed to satisfy the requirements of Crim.R. 11(C)(2), a review of the record indicates that the trial court properly advised Merryman of the nature of the charges and the maximum penalty involved, the effect of the plea, as well as all of the rights Merryman was waiving by pleading guilty. The record indicates that Merryman understood the consequences of his plea and understood what rights he was waiving. Thus, we cannot say that Merryman's plea was anything but knowingly and voluntarily made. We overrule Merryman's second assignment of error.

## V.    Suppression of Custodial Statements

{¶40} In his third assignment of error, Merryman argues that the trial court should have suppressed his custodial statements to law enforcement because he was incapable of knowingly and intelligently waiving his *Miranda* rights. He argues that "he provided the trial court with Dr. Reardon's report evidencing [Merryman's] lack of cognitive ability to knowingly, voluntarily, and intelligently waive his *Miranda* rights." In the entry denying the motion to suppress, the trial court found that "the Defendant knowingly and voluntarily waived his *Miranda* rights. After considering the totality of the circumstances, the Court further finds that the Defendant knowing and voluntarily gave the statement to [Officer] Maynard."

A.  Standard of Review

**{¶41}**  Our standard of review of a motion to suppress is a familiar one:

> When considering an appeal from a trial court's decision on a motion to
> suppress evidence, we are presented with a mixed question of law and
> fact. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; *State
> v. Garrett,* Adams App. No. 05CA802, 2005-Ohio-5155, ¶ 8. In a hearing
> on a motion to suppress, the trial court acts as the trier of fact and is in the
> best position to resolve factual questions and evaluate the credibility of
> witnesses. *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d
> 988, certiorari denied (1996), 516 U.S. 1096, 116 S.Ct. 822, 133 L.Ed.2d
> 765. Accordingly, we defer to the trial court's findings of fact if they are
> supported by competent, credible evidence. *State v. Fanning* (1982), 1
> Ohio St.3d 19, 20, 437 N.E.2d 583; *Garrett,* supra. Accepting those facts
> as true, we must independently determine, without deference to the trial
> court, whether the trial court reached the correct legal conclusion in
> applying the facts of the case. *State v. Roberts,* 110 Ohio St.3d 71, 850
> N.E.2d 1168, 2006-Ohio-3665, ¶ 100, citing *State v. Burnside,* 100 Ohio
> St.3d 152, 797 N.E.2d 71, 2003-Ohio-5372, ¶ 8; *State v. Acord,* Ross App.
> No. 05CA2858, 2006-Ohio1616, ¶ 9. *See,* generally, *United States v.
> Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740; *Ornelas v.
> United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.

*State v. Ralston,* 4th Dist. Ross No. 06CA2898, 2007-Ohio-177, at ¶ 14.

B.  Merryman Forfeited Errors on his Motion to Suppress

**{¶42}**  In his motion to suppress, Merryman gave only one reason for

suppressing his confession to the trial court:

> The defendant was in custody and told the police that he did not want to
> give up his right to a lawyer. He told the police that he was not signing the
> part of the form giving up his right to a lawyer. This was ignored by the
> police. The police continued with the interrogation process. This violates
> the defendant's right to counsel, to remain silent and the right todue
> process under the Fifth, Sixth, and Fourteenth Amendment of the United
> States Constitution and Article I, Section 10 of the Ohio Constitution.
>                          *                 *                 *
> The defendant in this case did not initiate communication with the police
> after invoking his right to remain silent and his right to counsel, he was not
> provided with a lawyer and his wavier was not knowing, voluntary or
> intelligent.

Merryman's entire focus was upon the questioning by Officer Maynard and the statement Merryman made concerning his refusal to sign a section of the *Miranda* form. Nowhere in his motion to suppress, his questioning of witnesses, presentation of evidence, argument at the suppression hearing, or his post-hearing supplemental memorandum did Merryman ever raise the issue that he lacked the cognitive ability to give a valid waiver of his *Miranda* rights, nor did he present the trial court with Dr. Reardon's reports in furtherance of such argument. Before the prosecution shoulders the burden of proof on the voluntariness of the such a waiver, the defendant must first state the basis for his motion to suppress, setting forth factual and legal issues with sufficient clarity to alert the court and prosecutor to the issues at hand. As we explained in *State v. Marcinko,* 4th Dist. Washington No. 06CA51, 2007-Ohio-1166, at ¶ 22 (quoting  Xenia v. Wallace (1998), 37 Ohio St.3d 216, 218-219, 524 N.E.2d 889):

> "The prosecutor must know the grounds of the challenge in order to prepare his case, and the court must know the grounds of the challenge in order to rule on evidentiary issues at the hearing and properly dispose of the merits. Therefore, the defendant must make clear the grounds upon which he challenges the submission of evidence pursuant to a warrantless search or seizure. Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal."

**{¶43}**  At no time while the trial court considered the motion to suppress did Merryman ever put forward any factual basis or argument that his waiver was involuntary due to his lack of cognitive ability. Having failed to raise the issue in the trial court, he has forfeited the right to raise it on appeal. *Marcinko,* at ¶ 23; see also *State v.*

*Shindler* (1994), 70 Ohio St.3d 54, 58, 636 N.E.2d 319 ("By requiring the defendant to state with particularity the legal and factual issues to be resolved, the prosecutor and court are placed on notice of those issues to be heard and decided by the court and, by omission, those issues which are otherwise being waived."); *State v. VanHoose,*4th Dist. Pike No. 07CA765, 2008-Ohio-1122, at ¶18; *State v. Jacobson,* 4th Dist. Adams No. 01CA730, 2003-Ohio-1201. *State v. Wilson,* 9th Dist. Medina No. 02CA0013-M, 2003-Ohio-540, at ¶ 16 ("Appellant's motion to suppress did not allege that the consent to search the trunk was not voluntarily given or that the evidence should be suppressed because the consent for the search of the cooler was given by a person who claimed no ownership of the cooler. Moreover, these issues were not raised at the suppression hearing. Therefore, appellant cannot assert them for the first time on appeal."). Nor will we sua sponte consider his argument under a plain error standard of review.

**{¶44}** Merryman relies primarily on evidence presented at his change of plea hearing for his argument. For instance, he points out that, in Dr. Reardon's report, which was submitted as Defendant's Exhibit B at the change of plea hearing, "Dr. Reardon explained that Ricky was not cognitively capable of comprehending what was happening during his exchange with police about his *Miranda* rights, and simply went along with what he was told." However, this evidence from a subsequent proceeding was not before the trial court during its deliberation on the motion to suppress; therefore, we cannot use it to review the propriety of that prior ruling. See *State v. Davis* (1964), 1 Ohio St.2d 28, 203 N.E.2d 357, syllabus ("Where counsel for an accused objects to admission of a confession on the specific ground that it was not voluntarily made and there is no evidence to support a conclusion that it was not voluntarily made,

the accused cannot, after trial, successfully maintain that the court erred in overruling the objection by then relying upon a valid ground for his objection which was not called to the court's attention at a time when such error could have been avoided and corrected.")

{¶45} Finally, Merryman has waived his right to appeal the trial court's decision on his motion to suppress. We have overruled Merryman's second assignment of error and affirmed the trial court's determination that Merryman voluntarily and knowingly changed his plea to guilty. A guilty plea waives all claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea, unless such errors are shown to have precluded the defendant from voluntarily entering into his or her plea. *State v. Fitzpatrick,* 102 Ohio St.3d 321, 2004-Ohio-3167, ¶ 78; *State v. Storms,* 4th Dist. Athens No. 05CA30, 2006-Ohio-3547, ¶ 9. *State v. Jacobson,* 4th Dist. Adams No. 01CA730, 2003-Ohio-1201; *State v. Benson* (Aug. 9, 1995), 4th Dist. Washington No. 94CA36 citing *Huber Hts. v. Duty* (1985), 27 Ohio App.3d 244, 500 N.E.2d 339. See, also, *State v. Kelley* (1991), 57 Ohio St.3d 127, 566 N.E.2d 658, paragraph two of the syllabus (stating that a guilty plea "waives all appealable errors which may have occurred * * * unless such errors are shown to have precluded the defendant from voluntarily entering into his or her plea."); *State v. Gadd*, 6th Dist. Ottawa No. OT-08-053, 2010-Ohio-3072, at ¶ 5. After the trial court complied with Crim.R. 11, Merryman chose to plead guilty and agreed to a plea bargain, which consisted of his guilty plea in exchange for the state's recommendation of a sentence of life in prison with a possibility of parole after ten years on all three charges and to have them all run concurrently. Because Merryman voluntarily and knowingly pled guilty, he forfeited his right to appeal

the trial court's decision on his motion to suppress. We overrule Merryman's third

assignment of error.

                    VI.      Imposition of Separate Sentences for Allied Offenses

**{¶46}** In his fourth assignment of error, Merryman argues that the trial court

erred when it imposed separate sentences for offenses that arose from the same

conduct, were not committed separately or with a separate animus, and should have

been merged for sentencing purposes under R.C. 2941.25. He argues that the

kidnapping offense under R.C. 2905.01(A)(4) should be merged with the rape offense

under R.C. 2907.02(A)(1)(b).  Merryman argues the kidnapping and rape were not

committed by separate conduct and there was not a separate animus. Because they

were allied offenses, he argues that the trial court committed plain error by failing to

merge them. The State argues that the kidnapping was separate from the rape in that

the restrain or confinement was secretive and there existed a separate animus as to

each offense sufficient to support separate convictions.  We agree with the State and

find that the trial court did not err when it sentenced Merryman separately for rape and

kidnapping.

                                   A.  Standard of Review

**{¶47}** Appellate courts apply a de novo standard of review in reviewing a trial

court's application of the merger statute, R.C. 2941.25.  *State v. Williams,* 134 Ohio

St.3d 482, 488, 2012-Ohio-5699, ¶¶ 25-28, 983 N.E.2d 1245, 1251. "Appellate courts

apply the law to the facts of individual cases to make a legal determination as to

whether R.C. 2941.25 allows multiple convictions."  *Id.*

                              B.      Merryman's Merger Claim

**{¶48}** Merryman entered into a plea agreement and voluntarily plead guilty to two rape offenses and a kidnapping offense. He also agreed to the sentencing imposed by the trial court. Sentencing Hearing Transcript, pp. 9 & 16.  At no time during the change of plea hearing or during the sentencing phase did Merryman raise an objection or argue that the kidnapping and rape charge were allied offenses of similar import and should have been merged under R.C.2941.25(A). However, the Supreme Court of Ohio has determined that such failure does not constitute a waiver. *State v. Underwood,* 124 Ohio St.3d 365, Syllabus 1, 2010-Ohio-1, 922 N.E.2d 923. Where a defendant is sentenced to a jointly recommended sentence pursuant to a plea agreement and fails to raise the issue at trial, the failure to merge convictions on allied offenses may be reviewed for plain error under Crim. R. 52(B). *Underwood*, 124 Ohio St. 3d at 372; *State v. Creech*, 188 Ohio App.3d 513, 523, 2010-Ohio-2553 (4th Dist.).[1]

**{¶49}** Plain error exists when the error is plain or obvious and when the error affects substantial rights.  To rise to the level of plain error, it must appear on the face of the record that an error was committed.  *State v. Slagle*, 65 Ohio St. 3d 597, 605, 605 N.E. 2d 916, 925 ("The appellate court must examine the error asserted by the defendant-appellant in light of all of the evidence").

> The test for plain error is stringent. A party claiming plain error must show that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the trial. Moreover, the burden of demonstrating plain error is on the party asserting it.

*State v. Davis*, 116 Ohio St.3d 404, 455, 2008-Ohio-2, 880 N.E.2d 21, 84,

---

[1] In *State v. Rogers,* 2013-Ohio-3235 the Eight District has concluded in an en banc decision that the failure of the trial court to address merger when the charges facially present the issue results in plain error.  We do not address that issue here.

citations omitted (where nothing in the record supported a finding of plain error, appellant failed to meet his burden). An error affects substantial rights when, but for the error, the outcome of the proceeding clearly would have been otherwise. We take notice of plain error with the utmost of caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Creech*, 188 Ohio App.3d 513, 523, 2010-Ohio-2553 (4th Dist.).

{¶50} Although neither of the parties nor the court addressed the merger issue, the record before us contains sufficient evidence for our review. Merryman argues that, based on his confession to Officer Maynard, he committed the kidnapping for the sole purpose of facilitating the rape. Merryman-Maynard Transcript, at 33-38. The State argues that the purpose of Merryman's kidnapping was to create secrecy so that he could avoid detection. According to the record, Merryman told Officer Maynard that he removed the victim from the hallway into the bathroom and then, once in the bathroom, he moved him into a stall and locked the stall. Merryman claimed he did this because he did not want anyone else coming in and getting Merryman in trouble. Merryman-Maynard Transcript, at 33-38.

The statute that addresses merger of allied offenses states:

R.C. 2941.25 Multiple counts

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such

offenses, and the defendant may be convicted of all of them.

To determine whether two offenses are allied offenses of similar import subject to merger, we must determine whether the offenses were committed by the same conduct. *Id.* at 162.  This involves a two-step process.  First, we must consider the conduct of the accused.  *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, syllabus, 942 N.E.2d 1061.  Under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct.  If the offenses correspond to such a degree that the conduct of the defendant can constitute the commission of both of the offenses, then the offenses are of similar import.  If we determine that the offenses are of similar import, then we must determine if they were in fact committed by the same conduct – a single act, committed with a single state of mind. *Id.* at 163.

> **{¶51}**  Here, kidnapping is set forth in R.C. 2905.01(A)(4), which provides:

> No person, . . . in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
> *           *           *
>  (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will; . . . .

The relevant rape provision is set forth in R.C. 2907.02(A)(1)(b):

> (A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
> *           *           *
> (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

Here Merryman removed the victim from the hallway into the bathroom, then into the stall, which he locked.  After he had the victim in the bathroom stall, he raped the victim.

We assume arguendo that the two offenses are of similar import, i.e. that it is possible to commit both offenses with the same conduct. We now must determine if the two offenses were in fact committed by the same conduct, i.e. a single act with a single state of mind.

{¶52} Under certain circumstances rape under R.C 2907.02(A)(1)(b) and kidnapping under R.C. 2905.01(A)(4) may be allied offenses as defined under the *Johnson*, which warns against a court accepting "the invitation of the state to parse [defendant's] conduct into a blow-by-blow in order to sustain multiple convictions . . . ." Johnson, at ¶ 56. But here, we do not have a situation where the State is attempting to punish Merryman for the kidnapping conduct that resulted from the incidental restraint that occurred during the rape in the bathroom stall. Moreover, even if we were to determine that the kidnapping and rape were committed by the same conduct, we find that the offenses were not committed with a single state of mind, or animus. *Johnson*, at ¶ 49; see *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979)(animus is intended to mean "purpose" or "immediate motive"). In *Logan*, the Supreme Court of Ohio set forth guidelines for determining whether kidnapping and another offense should be merged under R.C. 2941.25:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, *the confinement is secretive*, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense

sufficient to support separate convictions.

*Logan*, at syllabus (emphasis added). Here, Merryman stated that his motive for the kidnapping conduct was "cause I didn't want anybody else coming in." Merryman-Maynard Transcript, at 37-38. His motive was to create secrecy – the conduct of removing the victim from the hallway to the bathroom was to avoid detection. He could have performed oral sex upon the victim in the hallway but Merryman had a separate animus for the kidnapping, i.e. he wanted his actions to be secret; this separate animus supports a separate conviction for kidnapping. See *State v. Smith,* 7th Dist. Mahoning No. 11MA120, 2013-Ohio-756 (moving victim from bedroom to the dining room and then living room and raping her while her two-year old slept in bedroom was seen as secretive and the trial court did not err when it failed to merge the kidnapping offense with the rape offense). The trial court did not commit err when it failed to merge the kidnapping offense with the rape offense. Because there was no error, plain or otherwise, we overrule Merryman's fourth assignment of error.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court

BY: _____
      William H. Harsha, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**