[Cite as *State v. Eutsey*, 2021-Ohio-3913.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JOSIAH EUTSEY | : | Case No. 2020 CA 00152 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common
                            Pleas, Case No. 2019 CR 2233


JUDGMENT:                   Affirmed


DATE OF JUDGMENT:           November 3, 2021


APPEARANCES:

For Plaintiff-Appellee                      For Defendant-Appellant

KYLE L. STONE                               GEORGE URBAN
PROSECUTING ATTORNEY                        116 Cleveland Avenue N.W.
                                            Canton, OH 44702
  By:  LON'CHERIE' D. BILLINGSLEY
       110 Central Plaza South - Suite 510
       Canton, OH 44702-1413

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Josiah "Jo Jo" Eutsey appeals the October 21, 2020 judgment of the Stark County Court of Common Pleas sentencing him to an aggregate total of 18 years to life. Plaintiff-Appellee is the State of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   Twenty-year-old Dewayne Jackson and 19-year-old Te'Quan Franklin were best friends who hung out on a daily basis. May 30, 2019 was no exception. On that day the two decided to steal some marijuana from appellant Eutsey. The three men knew one another from playing midget football as children.

{¶ 3}   Jackson set up a meeting with Eutsey on the pretense of purchasing a half pound of marijuana. Eutsey expected $1200 from the deal, but neither Jackson nor Franklin actually had any money. The three were to meet at the Shorb Drive-Thru in Canton, Ohio.

{¶ 4}   Jackson and Franklin walked to the drive thru which was a two-minute walk from Jackson's home on Worley Ave NE. Shortly before 3:00 p.m., Eutsey arrived alone in a black Toyota RAV4 SUV with tinted windows. Jackson and Franklin left the business and got into the vehicle with Jackson in the front passenger seat and Franklin behind him. Eutsey drove a short distance away from the drive thru and then stopped so Franklin and Jackson could look at the marijuana.

{¶ 5}   Franklin took that opportunity to get out of the SUV and walk toward the rear of the vehicle. Jackson then asked him to "come smell the weed," so he did. Franklin asked Eutsey what kind of marijuana it was, then grabbed the bag and ran. As he ran, Franklin looked back to see Jackson still sitting in the passenger seat of the SUV looking

at him. He wondered why Jackson had not run as well. Eutsey speed after Franklin in the SUV, but Franklin lost him by running through yards. Jackson called Franklin asked what he was doing, he told Franklin Jo Jo had a gun on him, and asked him to bring back the marijuana. Franklin refused.

{¶ 6} While that was happening, Rachelle Lang went to the window of her apartment at the corner of 19th Street and Gross NE to see what her dog was barking about. At the window she saw children getting off the school bus and running to their homes. As she stood watching she saw a black 4-door SUV race up the street in the same direction as the bus. She heard gunshots then saw Jackson either jump or get pushed out of the rear passenger side of the SUV. She raced outside to find Jackson attempting to drag himself out of the road. She and another bystander helped Jackson until first responders arrived. Jackson told Lang he had been shot but when Lang asked who shot him Jackson said he did not know.

{¶ 7} Canton Police Officers Kyle Slone and Andrew Russ were first on the scene followed immediately thereafter by several other Canton Police Officers. Jackson could not tell officers who had shot him as he was in a great deal of pain and unresponsive. Some officers rendered lifesaving attempts until an ambulance arrived and others looked for evidence.

{¶ 8} A bystander gave Sergeant Shane Buie Jackson's cell phone. Officers recovered no other evidence of value at the scene.

{¶ 9} Jackson was transported to Aultman Hospital. Ten to 15 minutes later, Franklin learned Jackson had been shot. Distraught, Franklin went to Aultman where he

met Jackson's mother and told her what had happened. Jackson was life-flighted to a Cleveland hospital, but died of his injuries the following day.

{¶ 10} On June 3, 2019, Officer Slone obtained security video from the Shorb Drive-Thru and from a Ring Doorbell mounted on a residence on Worley Ave. NE. The security video showed Franklin and Jackson at the Shorb Drive-Thru several minutes before the shooting. The Ring Doorbell video showed Franklin running eastbound across Worley with the marijuana in his right hand.

{¶ 11} Officers also obtained security camera footage from nearby cameras mounted outside the Stark County Sanitation building and Walther's Café for the same time period. The videos show a black SUV traveling northbound on Maple at a high rate of speed and running the stop sign at Maple and 19th Street.

{¶ 12} After Eutsey was developed as a suspect, Franklin met with Canton Police Officer Zachary Snader who provided Franklin with a photo array. Franklin identified a photo of Eutsey as the man he and Jackson met on May 30, 2019 with 100 percent certainty. Franklin also consented to a search of his phone as well as his home where the stolen marijuana was recovered.

{¶ 13} Federal Bureau of Investigation Agent Jacob Kunkle, an expert in cellular technology and cellular surveying analysis examined cell phones belonging to Jackson and Franklin. He also examined Sprint Cellular records for the phone number associated with Eutsey. Kunkle was able to establish a timeline of communications between phones associated with Eutsey, Jackson, and Franklin, and where the phones were when the calls were made. Because Kunkle had the actual telephones belonging to Jackson and Franklin, he was able to access GPS data from those phones. Because he did not have

Eutsey's phone, he could only determine what cell towers the phone was close to when calls were made. Nonetheless, the locations of the calls coincided with the security videos.

{¶ 14} Specifically, Kunkle determined the communications between the three phones began with a 34-second call from Eutsey's phone to Jackson's at 2:47 p.m. At 2:52 p.m., Jackson's phone contacted Eutsey's phone for a 29 second call. At 3:03:33, Jackson's phone began moving from the Shorb Drive-Thru to the scene of the homicide. At 3:04, Jackson's phone contacted Franklin's phone. At 3:04:14 Eutsey's phone pinged the cell tower at Walnut NE between 6th and 12th Street. At 3:05:42 Jackson again contacted Franklin, a call that lasted one minute and 32 seconds. Jackson's phone at that point was approaching 12th and Maple NE. At 3:06:40 Eutsey's phone pinged near Cook Park on 12th Street NE. At 3:07, Jackson contacted Franklin for 10 seconds. At 3:08:22 Jackson's phone stopped at 19th and Gross.

{¶ 15} Jackson's body was examined by Forensic Pathologist Dr. Erica Armstrong. Armstrong determined Jackson had a single gunshot entrance wound at his left back. The bullet transected Jackson's aorta artery and his vena cava vein, traveled through his liver and exited at his right front abdominal area. Dr. Armstrong found the cause of death was a gunshot wound of the trunk and the manner of death was homicide.

{¶ 16} In December, 2019, the black RAV4 SUV associated with Eutsey was located in Toledo, Ohio at his mother's home. A search warrant was obtained to search and process the vehicle for evidence. Although portions of the interior of the vehicle fluoresced after being treated with Luminol, no blood evidence was found in the vehicle.

{¶ 17} On November 13, 2019, the Stark County Grand Jury returned an indictment charging Eutsey as follows:

{¶ 18} Count one, murder pursuant to R.C. 2903.02(A), 2903.02(D), 2903.02(B); count two, felony murder pursuant to R.C. 2903.02(B), 2903.02(D); count three, felonious assault pursuant to R.C. 2903.11(A), 290311(D)(1)(a) and count four, improperly handing a firearm in a motor vehicle pursuant to R.C. 2923.16(B), 2923.16(I). Each count carried a firearm specification.

{¶ 19} Eutsey pled not guilty to the charges and elected to proceed to a jury trial which began on September 14, 2020. After hearing the above outlined evidence, the jury convicted Eutsey of felony murder, felonious assault, improperly handling a firearm in a motor vehicle, and the accompanying firearm specifications. He was acquitted of murder as contained in count one of the indictment. He was subsequently sentenced to an aggregate total of 18 year to life.

{¶ 20} Appellant timely appealed and the matter is now before this court for consideration. He raises four assignments of error as follow:

I

{¶ 21} "THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTION MUST BE REVERSED."

II

{¶ 22} "THE APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AND MUST BE REVERSED."

III

{¶ 23} "THE TRIAL COURT PLAINLY ERRED BY FAILING TO PRESENT A JURY INSTRUCTION ON THE LESSER INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER AND AGGRAVATED ASSAULT."

IV

{¶ 24} "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."

I, II

{¶ 25} We address Eutsey's first two assignments of error together. In these assignments of error, Eutsey argues his convictions are against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 26} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider

the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 27} Eutsey does not argue the state failed to prove any one element of felony murder, felonious assault, or improperly handing a firearm in a motor vehicle. Instead, Eutsey challenges the type of evidence presented and credibility and consistency of the witnesses.

{¶ 28} Eutsey first argues there was no direct evidence presented to support his convictions. It is axiomatic however, that circumstantial and direct evidence inherently possess the same probative value. See *Jenks*, supra at paragraph one of the syllabus. In this matter there was abundant circumstantial evidence connecting Eutsey to the charged crimes and the fact that he committed the crimes with a gun.

{¶ 29} Next, Eutsey faults Rachelle Lang for initially reporting the vehicle she saw Jackson emerge from was a Jeep, possibly a 2015 model. At trial, however, Lang described the vehicle as a "black everything 4-door SUV" and identified a photo of Eutsy's RAV4 as the vehicle she saw on May 30, 2019. Transcript of trial (T) at 170. Additionally, when confronted about her initial report that the vehicle was a Jeep Lang explained "I really don't know cars" and further stated she was not at all surprised the vehicle was not actually a Jeep. (T) 170-171.

{¶ 30} Eutsey also finds contradiction in Lang's testimony that Jackson was either pushed or jumped out of the rear passenger side of the car and Franklin's testimony that Jackson was seated in the front passenger seat. We find however, the jury could have reasonably determined that Jackson switched seats in the minutes after Franklin ran, and in any event, which door Jackson emerged from had no real bearing on any fact of consequence in this matter.

{¶ 31} Eutsey also argues his convictions are against the manifest weight and sufficiency of the evidence because Franklin was not credible. Credibility determinations, however, are a matter for the trier of fact to sort out. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, an appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, quoting *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶ 32} Here, a rational basis exists for the jury's decision as the evidence presented from other fact and expert witnesses supported Franklin's testimony. We therefore reject Eutsey's credibility arguments.

{¶ 33} Eutsey next argues he could not be the person who shot Jackson because Jackson could not identify him as the shooter. A review of the record indicates, however, that Jackson was in poor condition and in a great deal of pain when help arrived and became unconscious shortly thereafter. T. 151, 166, 168. We therefore find Jackson's inability to identify the shooter does not render Eutsey's convictions against the manifest weight or sufficiency of the evidence.

{¶ 34} After viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, that the evidence is not against the manifest weight of the evidence as nothing within the record supports a conclusion that the jury lost its way and this is not an exceptional case in which the evidence weighs heavily against the conviction.

{¶ 35} The first and second assignments of error are overruled.

III

{¶ 36} In his third assignment of error, Appellant asserts the trial court committed plain error by failing to charge the jury on the lesser included offenses of voluntary manslaughter and aggravated assault because he was incited to a sudden fit of passion or rage by the theft of his marijuana. We disagree.

{¶ 37} Defense counsel did not request an instruction for any lesser included offense. We therefore analyze this assignment of error for plain error.

{¶ 38} The Supreme Court of Ohio recently clarified the plain error standard of review:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id*. We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable *probability* that the error resulted in prejudice—the same deferential standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id*. at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and *only* to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240,

quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 39} *State v. Thomas*, 152 Ohio St.3d 15, 92 N.E.3d 821, 2017-Ohio-8011, ¶¶ 32-34.

{¶ 40} A trial court should give a jury instruction on a lesser included offense only if the facts warrant it, that is, only where the jury could reasonably conclude the evidence supports a finding of guilt on the lesser included offense, but not on the principal charge, *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988).

{¶ 41} At trial, Eutsey presented a complete defense arguing he did not commit the charged crimes. (T.) 544-545. Indeed, in his first two assignments of error here on appeal Eutsey also argues he did not commit the offenses. Eutsey cannot present a complete defense yet also argue he was provoked into committing the offense because he was robbed. He made no such admissions at trial. The evidence presented did not therefore warrant any lesser included offense instruction. Accordingly, we find it was not error, plain or otherwise, for the court to fail to instruct on any lesser included offense.

{¶ 42} The third assignment of error is overruled.

IV

{¶ 43} In his final assignment of error, Eutsey argues he was denied effective assistance of counsel when his trial counsel failed to request a jury instruction for the lesser included offenses of aggravated assault and/or voluntary manslaughter, and further for failing to object to hearsay testimony from Jackson's mother Natalie Williams. We disagree.

{¶ 44} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 45} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential. Strickland, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18.

{¶ 46} First, as we have already determined in the third assignment of error, a lesser included offense instruction was not warranted in this matter. We therefore reject Eutsey's ineffective assistance complaints in that regard.

{¶ 47} Next, Eutsey argues his trial counsel should have objected to William's statement regarding what Franklin told her at the hospital. Our review of the record, however, reveals the statement was properly admitted as an excited utterance under Evid.R. 803(2). The rule defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement

caused by the event or condition." The admissibility of such statements does not depend upon the availability of the declarant as a witness. Evid.R. 803.

{¶ 48} Here, the state properly laid a foundation for the statement's admission. Williams testified Franklin under the stress of learning his best friend had been shot. She described Franklin as upset, cussing, punched a wall, and sat in a chair rocking back and forth and rubbing his head. (T) 207-208. There was therefore no legitimate reason for defense counsel to object.

{¶ 49} The final assignment of error is overruled.

{¶ 50} The judgment of conviction and sentence of the Stark County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Delaney, J. concur.

EEW/rw