[Cite as *State v. Heatherington*, 2022-Ohio-1375.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

    Plaintiff-Appellee

-vs-

COLBY HEATHERINGTON

    Defendant-Appellant

JUDGES:
Hon. Earle E. Wise, Jr., P. J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2021 CA 0021

O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. 2020 CR 0233 R |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | April 22, 2022 |

APPEARANCES:

For Plaintiff-Appellee

GARY BISHOP
PROSECUTING ATTORNEY
OLIVIA BOYER
ASSISTANT PROSECUTOR
38 South Park Street, Second Floor
Mansfield, Ohio 44902

For Defendant-Appellant

DARIN AVERY
105 Sturges Avenue
Mansfield, Ohio 44903

*Wise, John, J.*

{¶1} Defendant-Appellant Colby Heatherington ("Appellant") appeals his conviction and sentence entered in the Richland County Court of Common Pleas on one count of Felonious Assault in violation of R.C. §2903.11(A)(1), one count of Abduction in violation of R.C. §2905.02(A)(2), one count of Assault in violation of R.C. §2903.13(A), and Aggravated Menacing in violation of R.C. §2903.21(A) following a jury trial. Appellee is the state of Ohio. The relevant facts leading to this appeal are as follows.

## STATEMENT OF THE FACTS AND CASE

{¶2} On February 28, 2020, Mansfield Police arrested Appellant in connection with an alleged assault.

{¶3} On April 8, 2020, Appellant was indicted on six counts: Count 1, Felonious Assault, a second-degree felony in violation of R.C. §2903.11(A)(1); Count 2, Felonious Assault, a second-degree felony in violation of R.C. §2903.11(A)(2); Count 3, Abduction, a third-degree felony in violation of R.C. §2905.02(A)(2); Count 4, Abduction, a third-degree felony in violation of R.C. §2905.02(B); Count 5, Assault, a first-degree misdemeanor in violation of R.C. §2903.13(A); and Count 6, Aggravated Menacing, a first-degree misdemeanor in violation of R.C. §2903.21(A).

{¶4} On June 17, 2020, Appellant's counsel moved for a court evaluation of Appellant's competency to stand trial and assist in his defense.

{¶5} On July 6, 2020, the trial court ordered an evaluation on Appellant's competency to stand trial.

**{¶6}** On December 10, 2020, after a competency evaluation, the trial court held a hearing on Appellant's capacity to stand trial. Both parties stipulated to Appellant's competency.

**{¶7}** On March 8, 2020, a jury trial commenced.

**{¶8}** At trial, Appellee first called dispatcher Ashley Jeffrey to testify. Jeffrey testified that on February 28, 2020, she took an emergency call of a female being assaulted. Jeffrey described the female caller as petrified. The caller, the victim, identified herself. The victim told Jeffrey she had locked herself in the bathroom trying to get away from her attacker.

**{¶9}** The victim identified Appellant as her attacker. On the call, the victim said she thought Appellant would kill her. The victim described Appellant to Jeffrey and what he was wearing.

**{¶10}** Next, Officer Eric Schaaf testified that he is a member of the Mansfield Police Department and was working on February 28, 2020, with his partner, Officer Jake Reitschlin. Upon arriving at the victim's address, the victim came running out of the bathroom toward the officers. The victim was covered in blood and did not want the police to leave her. Reitschlin stayed with the victim while Schaaf did a sweep of the apartment and ascertained Appellant was not present in the apartment. Schaaf testified that he took photographs at the scene. These included pictures of the victim's injuries, pictures of the scene showing blood, pictures of a pill bottle containing white powder and a rolled up $100 bill, and a large knife on the bed.

**{¶11}** Schaaf continued that when he came down to the front of the apartment building, Officers Blair and Rogers were already waiting with Appellant. At that point

Officer Reitschlin read Appellant his Miranda rights. Schaaf then identified Appellant as the man apprehended on February 28, 2020.

{¶12} Next, Schaaf identified more photographs of Appellant, his clothing, and blood on Appellant's clothing.

{¶13} Schaaf then determined after reading Appellant his rights, it would be fruitless to talk with him, so they took him to jail. En route to jail, Schaaf asked Appellant about the incident. Appellant said he strangled her because she asked him to leave her apartment.

{¶14} Next, Eric Buchanan testified he is a paramedic with the Mansfield Fire Department. When he arrived on scene, the victim told him she wanted to be transported to the hospital to be treated for her injuries. She indicated she had been drinking alcohol and using drugs.

{¶15} Rachel Muir then testified that she is employed as a nurse practitioner at Mansfield Hospital. Muir testified that the victim suffered significant swelling and periorbital edema around her eye and right jaw, pain in her chest wall, pain in her left hand and wrist. Rachel Muir continued that her drug screen showed she had alcohol, benzodiazepine, THC, and opiates in her system.

{¶16} Next, Officer Clay Blair testified he is employed by the Mansfield Police Department. On February 28, 2020, Blair contacted Appellant after receiving a description of Appellant and a request from Officer Schaaf to contact the individual. Officer Blair instructed the Appellant to remove his hands from his pockets and to approach Officer Blair. Appellant was not really listening, and attempted to continue to walk away from the officers. At this point Officer Blair repeated the request and said he detained Appellant.

{¶17} While detained, Officer Blair began questioning Appellant about the incident. At this point Appellant simply said, "I did it." Officer Blair testified after Appellant admitted to committing the assault, he continued to talk with Appellant. Officer Blair put Appellant in the back of his police car, continued to talk to him as Appellant was transported to Officer Schaaf, and recorded the conversation.

{¶18} While in the car, Appellant said the victim's face is going to be black on one side as he kept hitting her on that side, and that she can take a hit. Officer Blair never read Appellant *Miranda* warnings.

{¶19} Next, Dawn Frybeck, a DNA analyst in the Mansfield Police Department's crime laboratory testified according to her analysis, Appellant could not be excluded as a major contributor to the DNA found around the victim's neck.

{¶20} Appellee then rested its case.

{¶21} Appellee dismissed Count 2.

{¶22} The jury returned a verdict of guilty on Counts 1, 3, 5, 6, and a verdict of not guilty on Count 4.

{¶23} The trial court sentenced Appellant to eight to twelve years in prison on Count 1, thirty-six months in prison on Count 3, six months in jail on Count 5, and six months in jail on Count 6. Counts 1 and 3 are to run consecutively, and Counts 5 and 6 are to run concurrently for an aggregate sentence of eleven to fifteen years.

**ASSIGNMENT OF ERROR**

**{¶24}** Appellant timely filed a notice of appeal. He herein raises the following six Assignments of Error:

**{¶25}** "I. THE COURT ERRED IN SENTENCING THE DEFENDANT SEPARATELY FOR FELONIOUS ASSAULT AND ABDUCTION.

**{¶26}** "II. THE COURT ERRED IN FINDING THE DEFENDANT COMPETENT TO STAND TRIAL.

**{¶27}** "III. APPELLANT DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶28}** "IV. THE COURT ERRED IN ALLOWING UNSCIENTIFIC EXPERT OPINION IN THE GUISE OF SCIENTIFIC OPINION IN VIOLATION OF EVID.R. 702.

**{¶29}** "V. THE COURT VIOLATED APPELLANT'S RIGHT TO CONFRONT THE WITNESS AGAINST HIM.

**{¶30}** "VI. THE COURT ERRED IN SENTENCING HEATHERINGTON TO AN INDEFINITE NON-LIFE SENTENCE."

**{¶31}** For the purpose of judicial economy, we will address Appellant's assignments of error out of order.

**II.**

**{¶32}** In Appellant's Second Assignment of Error, Appellant argues the trial court erred in finding Appellant competent to stand trial. We disagree.

**{¶33}** A trial court's decision on competency will not be disturbed absent an abuse of discretion. *State v. Clark*, 71 Ohio St.3d 466, 469, 1994-Ohio-43, 644 N.E.2d 331. The abuse of discretion standard is more than an error of judgment; it implies the court ruled

arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). Therefore, an appellate court will not overrule the trial court's competency determination if the record contains credible, reliable evidence in support of the trial court's determination that the defendant understood the nature and objective of the proceedings against him. *State v. Williams*, 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986).

**{¶34}** Due process requires a criminal defendant be competent to stand trial. *State v. Smith*, 4th Dist. Pickaway No. 19CA33, 2021-Ohio-2866, ¶14 citing *State v. Lechner*, 4th Dist. Highland No. 19CA3, 2019-Ohio-4071, ¶25; *State v. Berry*, 72 Ohio St.3d 354, 359, 1995-Ohio-310, 650 N.E.2d 433. "It has long been accepted that a person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d103 (1975). Thus, "[c]onviction of an accused while he or she is legally incompetent is a violation of due process." *Smith*, 2021-Ohio-2866 at ¶14, citing *State v. Merryman*, 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶14.

**{¶35}** "The United States Supreme Court established the test for competency and requires the court determine if an accused 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.' " *Id.* at ¶15 citing *Lechner, supra* at ¶26, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789 4. L.Ed.2d 824 (1960).

**{¶36}** R.C. §2945.37(G) states:

A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

**{¶37}** Therefore, if a defendant is capable of understanding the nature and objective of the proceedings and assisting in the defense, then the defendant is competent to stand trial. " 'Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.' " *Smith, supra* at ¶16 quoting *Lechner, supra,* quoting *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

**{¶38}** In the case *sub judice*, both sides stipulated to the findings of a board-certified forensic psychologist from Heartland Behavioral Healthcare. The report found Appellant had the capacity to participate in his own defense, that he understood the charges against him, the process, the meaning of the pleas of guilty and not guilty, the evidence to be presented, and the events that lead to the charges.

**{¶39}** Appellant stipulated to the report at a competency hearing on December 20, 2020.

**{¶40}** We conclude the trial court's finding of competency was made after receiving a competency evaluation and holding a hearing on the matter. The determination was based on the detailed evaluation and report prepared by a board-certified forensic psychologist. The report was stipulated to by the State and Appellant's counsel. Based on our review, the record contains reliable, credible evidence to support the trial court's decision that Appellant was competent to stand trial and/or enter a plea. We find the trial court did not abuse its discretion in determining Appellant was competent to stand trial.

**{¶41}** Appellant's Second Assignment of Error is overruled.

### III.

**{¶42}** In Appellant's Third Assignment of Error, Appellant argues trial counsel was ineffective for failing to file for dismissal based on speedy trial statutes, for failing to file an NGRI, for failing to suppress statements and recordings made by Appellant, and failing to object to hearsay. We disagree.

### a. Standard of Review

**{¶43}** Our standard is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's

ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. *Id.*

**{¶44}** Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267. In addition, the United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Bradley* at 143, 538 N.E.2d 373, quoting *Strickland* at 697, 104 S.Ct. 2052. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

### b. Speedy Trial

**{¶45}** Appellant first argues that trial counsel's failure to file a motion to dismiss pursuant to Ohio's Speedy Trial Statutes.

**{¶46}** Speedy trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). "The statutory speedy trial provisions, R.C. §2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589 (1980), syllabus.

**{¶47}** Pursuant to R.C. §2945.71(C)(2), the State must bring a defendant to trial on felony charges within 270 days of arrest. The statutory speedy-trial period begins to run on the date the defendant is arrested, although the date of arrest is not counted when calculating speedy-trial time. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶44, citing *State v. Tatum*, 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005. Once the statutory time limit has expired, the defendant has established a prima facie case for dismissal. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986). The burden then shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. §2945.72. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55-56, 661 N.E.2d 706 (1996). If the state has violated a defendant's right to a speedy trial, then the court must dismiss the charges against the defendant. R.C. §2945.72(B).

**{¶48}** Speedy trial time is tolled by those events listed in R.C. §2945.72. These events include any period of delay "necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused, and any continuance granted upon the accused's own motion[.]" R.C. §2945.72.

**{¶49}** A defendant's demand for discovery tolls the speedy trial time until the state responds to the discovery, or for a reasonable time. *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶26, 31; R.C. §2945.72(E). Courts have held this to be thirty days. *State v. Crawford*, 6th Dist. Lucas No. I-17-1297, 2019-Ohio-2660, ¶30.

**{¶50}** Under the "triple-count provision" contained in R.C. 2945.71(E), each day a defendant spends in jail in lieu of bail counts as three days in the speedy trial time calculation.

**{¶51}** "The Ohio Attorney General has opined that courts may suspend jury trials to prevent the spread of the corona virus and they may do so consistent with state and federal speedy-trial obligations." *In re Disqualification of Paris*, 161 Ohio St.3d 1285, 2020-Ohio-6875, 164 N.E.3d 509, ¶5; quoting *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609, ¶7; citing 2020 Atty.Gen.Ops. No. 2020-002. In *Fleegle*, the Ohio Supreme Court held that trial judges have the authority to continue trials on a case-by-case basis without violating speedy-trial requirements and continuing a trial because of a pandemic state emergency is reasonable under R.C.2945.72(H). *Id.*

**{¶52}** When reviewing a speedy trial question, an appellate court must count the number of delays chargeable to each Appellant and Appellee. Next, the appellate court must determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71. *State v. Ferrell*, 8th Dist. Cuyahoga No. 93003, 2010-Ohio-2882, ¶20. When reviewing legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶12.

**{¶53}** Below are the pertinent dates:

**{¶54}** On February 28, 2020, Appellant was arrested.

**{¶55}** Speedy trial time started on February 29, 2020.

**{¶56}** On March 5, 2020, the time was tolled as Appellant refused to go to the Municipal Court for a preliminary hearing.

**{¶57}** From March 9, 2020, through July 31, 2020, the time was tolled due to coronavirus.

**{¶58}** From July 31, 2020, to December 16, 2020, the time was tolled as the trial court deliberated on Appellant's competency to stand trial.

**{¶59}** From December 29, 2021, to January 8, 2021, time was tolled as Appellant filed a motion for a substitution of counsel.

**{¶60}** On February 26, 2021, the time was tolled as Appellant chose not to change his plea at a scheduled change of plea hearing, and a jury trial was scheduled for March 8, 2021.

**{¶61}** On March 8, 2021, Appellant's jury trial commenced. Therefore, time was not tolled for five days in March of 2020, fourteen days in December of 2021, twenty-four days in January of 2021, twenty-six days in February of 2021. This totals sixty-nine days in jail awaiting trial equating to a total of 207 days under the triple-count provision of R.C. §2945.71(E).

**{¶62}** Nothing in the record suggests any additional time beyond the 207 days noted above should be considered for a violation for want of a speedy trial. The total of 207 days does not exceed the 270-day threshold established by R.C. §2945.71(C)(2). As such, Appellant's claim of ineffective assistance of counsel with respect to trial counsel's failure to file a motion to dismiss for want of a speedy trial is overruled.

### c. Not Guilty by Reason of Insanity

**{¶63}** Appellant argues that trial counsel was ineffective for failing to raise an insanity defense in the proceedings.

**{¶64}** "Where facts and circumstances indicate that a plea of not guilty by reason of insanity would have had a reasonable probability of success, it is ineffective assistance of counsel to fail to enter the plea." *State v. Brown* (1992), 84 Ohio App.3d 414, 616

N.E.2d 1179. However, if the facts indicate that counsel was pursuing a reasonable strategy in not so pleading, or where the likelihood of success for the plea is low, the decision is not unreasonable. *State v. Twyman*, 2d Dist. Montgomery No. 19086, 2002-Ohio-3558.

**{¶65}** "A person is 'not guilty by reason of insanity' relative to a charge of an offense only if the person proves [by a preponderance of the evidence] that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." R.C. §2901.01(A)(14).

**{¶66}** In the case *sub judice*, Appellant points to nothing in the record which indicates he suffers from any type of mental illness at the time of the offense, or at any time in his life, as providing a basis for an insanity defense. In order to find trial counsel's performance deficient, there must be some indication that a not guilty by reason of insanity plea would have "a reasonable probability of success" based on the facts and circumstances in the case. *State v. Anaya*, 6th Dist. Lucas No. L-06-1375, 2008-Ohio-1853, ¶29, citing *State v. Brown*, 84 Ohio App.3d 414, 421, 616 N.E.2d 1179 (8th Dist.1992).

**{¶67}** With nothing in the record to indicate mental illness, Appellant's trial counsel was not deficient in failing to enter a plea of not guilty by reason of mental insanity. *Anaya* at ¶29, citing *State v. Twyman*, 2d Dist. Montgomery No. 19086, 2002-Ohio-3558, ¶73. Trial counsel may not be held ineffective for failing to attempt a "futile act." *State v. Leu*, 6th Dist. Lucas No. L-17-1265, 2019-Ohio-3404, ¶47. As such, Appellant's claim of ineffective assistance of counsel with respect to trial counsel's failure to enter a plea of not guilty by reason of insanity is overruled.

### d. Motion to Suppress

**{¶68}** Appellant argues that trial counsel's failure to file a motion to suppress Appellant's statements made while in custody constituted ineffective assistance of counsel as he was not read *Miranda* warnings until after he confessed to committing the crime.

**{¶69}** " '[F]ailure to file a suppression motion does not constitute per se ineffective assistance of counsel.' " *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986); *accord State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶126. " 'To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove there was a basis to suppress the evidence in question.' " *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶65, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶35. If the record contains no evidence to support a motion to suppress, or such little evidence that counsel could have decided that filing such a motion would be futile, then counsel is still considered effective. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶208, quoting *State v. Gibson*, 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980); *State v. Moon*, 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, ¶28, quoting *State v. Suarez*, 12th Dist. Warren No. CA2014-02-035, 2015-Ohio-64, ¶13.

**{¶70}** The Fifth Amendment to the United States Constitution guarantees no person shall be compelled to be a witness against himself, and the Sixth Amendment to the United States Constitution guarantees the accused shall have the assistance of counsel. *Miranda v. Arizona*, 384 U.S. 436, 442, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1996).

The inherently coercive nature of custodial interrogation heightens the risk a suspect will be denied the Fifth Amendment privilege not to be compelled to incriminate himself because custodial interrogation can "undermine the individual's will to resist and * * * compel him to speak where he would not otherwise do so freely." *J.D.B. v. North Carolina*, 564 U.S. 261, 269, 131 S.Ct. 2394, 2401, 180 L.Ed.2d 310 (2011), quoting *Miranda* at 467; *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).

{¶71} In light of the inherent coercion involved in custodial interrogation, *Miranda* established "a set of prophylactic measures" to safeguard the constitutional privilege against self-incrimination. *Dickerson* at 435. *Miranda* held the State may not use a defendant's statements from custodial interrogation "unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* at 444, 86 S.Ct. 1602. Prior to questioning, the police must warn the suspect "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id*. In *Miranda*, the Supreme Court recognized the importance of a suspect's "real understanding" of his rights and his intelligent decision whether to exercise them. *Id*. at 469.

{¶72} The sole remedy for a *Miranda* violation is the suppression of evidence which was derived from the violation. *Bennet v. Passic* (C.A.10, 1976), 545 F.2d 1260, 1263; *see Miranda, supra,* 384 U.S. at 479.

{¶73} In *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004), the United States Supreme Court addressed that whether the technique of

successive interrogations, with *Miranda* warnings being read in between the interrogations, violated *Miranda*. In determining whether the second statement was admissible, the Court listed factors to consider:

> * * * the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first. *Id.*

**{¶74}** Therefore, when *Miranda* warnings are given in the middle of a "coordinated and continuing interrogation", they will likely mislead and "depriv[e] a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them." *Id.* quoting *Moran v. Burbine*, 475 U.S. 412, 424, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "[I]t would ordinarily be unrealistic to treat two spates of integrated and proximately conducted questioning as independent interrogations subject to independent evaluation simply because *Miranda* warnings formally punctuate them in the middle." *Seibert* at 611-614.

**{¶75}** "*Seibert* points out that in 'question first' scenarios when the circumstances of the given case show that the *Miranda* warning could not reasonably be found effective, the post warning statements are inadmissible because 'the earlier and later statements are realistically seen as part of a single, unwarned sequence of questioning.' *Id.* at 612, 542 U.S. 600, 124 S.Ct.2601, 159 L.Ed.2d 643, fn.4." *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985.

{¶76}  In *Seibert*, the officer interrogated the defendant before reading her *Miranda* warnings. *Seibert* at 614-616. The officer then *Mirandized* the defendant, and immediately presented the defendant with her previous statements to which the defendant also confessed. *Id.* The Supreme Court held, the objective of the question-first interrogation is to wait for an opportune time to give *Miranda*, after the suspect confesses.

{¶77}  In the case *sub judice*, Officer Blair testified he detained Appellant as Appellant was attempting to walk away, ordered him to approach the officers, and take his hands out of his pocket. Within one minute of initiating contact with Appellant, Officer Blair handcuffed Appellant. After questioning Appellant while in handcuffs for nearly two minutes, Officer Blair asks Appellant for his side of the story. Appellant admits to the assault. After Officer Blair places Appellant, still restrained, in the back of the police car, Appellant continues with his confession. Appellant said that the victim grabbed her phone and hid in the bathroom, and he told her if she stayed still he would not beat her anymore. He said her nose was bleeding, and that he hit her above her eyebrow and she would be bleeding. Appellant continued that he bruised one side of the victim's face because he only used one hand. Appellant then said the victim can "take a hit." Officer Blair never gave Appellant *Miranda* warnings.

{¶78}  About thirty-minutes after making contact with Appellant and within minutes of Officer's Blairs interrogation of Appellant, Officer Schaaf took custody of Appellant. At this point the officers *Mirandized* Appellant. Appellant argued with Officer Schaaf and Officer Reitschlin about his rights, telling them he has a right to speak.

{¶79}  The officers decide questioning him would be pointless. Officer Schaaf placed Appellant in the back of his police car and transported him to jail. During the drive

to jail, Officer Schaaf asked Appellant about the assault. Appellant then told Officer Schaaf he assaulted and choked the victim. Officer Schaaf asked Appellant if he had a knife. Appellant denied having a knife.

{¶80} We find, based on the foregoing, that a reasonable probability exists that a motion to suppress Appellant's statements before *Miranda* warnings were given would have been granted only to those statements made prior to *Miranda*. Appellant was in custody at the time the interrogation started when Officer Blair asked Appellant to tell his side of the story. Appellant admitted to assaulting the victim. While being transported, Appellant continued to tell his side of the story and did not stop until right before Officer Schaaf took custody.

{¶81} After Appellant was *Mirandized*, he argued with officers about his right to remain silent, saying he had a right to speak. Therefore, he understood he did not have to say anything but wanted to tell his side of the story. Officer Schaaf then put Appellant in the back of a police car, where the officer asked Appellant about the incident. Appellant admitted to assaulting and choking the victim.

{¶82} In this case, the "mid-stream" *Miranda* warnings were effective enough to accomplish their objectives, making Appellant's statements made to officer Schaaf admissible. Appellant was provided *Miranda* warnings, argued with police that he did not wish to remain silent, showing he understood what the officer was saying. The record shows no coordination of questioning or use of the question-first technique by officers. Therefore, Appellant's statements made after *Miranda* warnings were issued, were properly admitted.

**{¶83}** Appellant has not shown that he suffered prejudice by counsel's failure to file a motion to suppress. The substance of the statements which would have been suppressed due to a lack of *Miranda* warnings came in via Appellant's post-*Miranda* statements. Thus, Appellant has failed to establish the outcome of the trial would have been different.

**{¶84}** As such, Appellant's claim of ineffective assistance of counsel regarding trial counsel's failure to file a motion to suppress Appellant's statements to law enforcement is overruled.

### e. Failure to Object to Hearsay

**{¶85}** Appellant argues his counsel should have objected to certain hearsay statements made by Officer Schaaf regarding who caused the victim's injuries.

**{¶86}** Upon review of the record, trial counsel did object to the testimony. The trial court admitted the statements under the excited utterance exception to the hearsay rule. Even assuming, *arguendo*, trial counsel should have renewed the objection and it would have been sustained, the jury heard the same statements and description of what occurred during Appellant's post-*Miranda* confession. Crim.R. 52(A) defines harmless error as "[a]ny defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Before error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Where no reasonable possibility exists that the unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, vacated on other grounds in *Lytle v. Ohio*, 438 U.S. 910,

98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978). Therefore, we find no prejudice as a result of counsel's failure to renew his objection to Officer Schaaf's testimony. As such, Appellant's claim of ineffective assistance of counsel regarding trial counsel's failure to object to hearsay is overruled.

**{¶87}** Appellant's Third Assignment of Error is overruled.

**IV.**

**{¶88}** In Appellant's Fourth Assignment of Error, Appellant argues the trial court erred in allowing the expert testimony of Dawn Fry to be introduced at trial. We disagree.

**{¶89}** Appellant claims Evid.R. 702(C) requires a blind tester for a DNA test to be reliable, but only cites R.C. §2933.83(D) in support.

**{¶90}** Evid.R. 702 states, in pertinent part:

A witness may testify as an expert if all of the following apply:

…

(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

(2) The design of the procedure, test, or experiment reliably implements the theory;

(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result.

**{¶91}** R.C. §2933.83(D) states, "[t]he requirements in this section regarding the procedures for live lineups or photo lineups conducted by a law enforcement agency or criminal justice entity do not prohibit a law enforcement agency or criminal justice entity from adopting other scientifically accepted procedures for conducting live lineups or photo lineups that the scientific community considers more effective."

**{¶92}** A plain reading of the statute permits law enforcement to conduct lineups that the scientific community considers more effective, but does not require it. This has no relevance regarding how an expert witness conducts his or her tests. Therefore, Appellant has presented no support that the trial court erred in admitting Dawn Fryback's testimony.

**{¶93}** Appellant's Fourth Assignment of Error is overruled.

**V.**

**{¶94}** In Appellant's Fifth Assignment of Error, Appellant argues the trial court erred in inappropriately admitted hearsay evidence. We disagree.

**{¶95}** "Ordinarily a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake City*, 58 Ohio St.3d 269, 271 (1991).

### a. Statements Made for Purpose of Medical Diagnosis or Treatment

**{¶96}** Evid.R. 803(4) states:

**Statements for Purposes of Medical Diagnosis or Treatment.**

Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

**{¶97}** Initially, we note that Appellant has failed to identify those portions of testimony where he claims Appellee's elicited testimony went beyond disclosures necessary for diagnosis in violation of the rule against hearsay. Although he has failed to comply with App.R. 16(A)(7), we nonetheless address Appellant's argument to the extent we are able to glean from his brief.

**{¶98}** As Appellant did not object to the testimony at the trial court proceedings, Appellant has waived all but plain error. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) at paragraph one of the syllabus; Crim.R. 52(B). To prevail under a plain error analysis, Appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Id.* at paragraph two of the syllabus. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

**{¶99}** Appellant's argument seems to be any statement made by the victim through the course of treatment is inadmissible hearsay because the statements went beyond diagnosis and the victim had benzodiazepine, cannabinoid, opiate, oxycodone,

and alcohol in the victim's system. Appellant offers no support for this argument. "The test under Evid.R. 803(4) goes solely to whether a statement was made for purposes of medical diagnosis or treatment." *State v. Dever*, 64 Ohio St.3d 401, 404, 1992-Ohio-41, 596 N.E.2d 436.

**{¶100}** Upon review, any testimony the victim made in her hospital file to doctors regarding her condition, the cause of, or identification of the perpetrator was properly admitted under the Statements for Purposes of Medical Diagnosis or Treatment. Evid.R. 803(4).

### b. Officers testimony on victim identification

**{¶101}** Appellant also alludes to statements made by the victim to Officer Schaaf identifying Appellant as her attacker should not have been admitted. These statements were objected to and the trial court admitted them as an excited utterance exception to the hearsay rule.

**{¶102}** Evid.R. 803(2) states, "**Excited Utterance**. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

**{¶103}** A statement being entered under the Evid.R. 803(2) exception to the hearsay rule does not depend on the availability of the declarant as a witness. *State v. Eutsey*, 5th Dist. Stark No. 2020 CA 00152, 2021-Ohio-3913, ¶47.

**{¶104}** In the case *sub judice*, the state laid a foundation for the statement's admission. Officer Schaaf testified to the victim identifying Appellant as her attacker while the victim was still under the stress of having been beaten, strangled, and chased into her bathroom by Appellant. The officer described the victim as petrified, upset, crying,

and afraid to be left alone. Therefore, upon a review of the record we find Officer Schaaf's testimony was properly admitted as an excited utterance under Evid.R. 803(2).

**{¶105}** Appellant's Fifth Assignment of Error is overruled.

**I.**

**{¶106}** In Appellant's First Assignment of Error, Appellant argues the trial court erred in declining to merge felonious assault and abduction. We disagree.

**{¶107}** The jury found Appellant guilty of Felonious Assault in violation of R.C. §2903.11(A)(1) which states: "No person shall do either of the following: (1) Cause serious physical harm to another or to another's unborn[.]" The jury also found Appellant guilty of Abduction in violation of R.C. §2905.02(A)(2) which states: "No person, without privilege to do so, shall knowingly do any of the following: * * * By force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]"

**{¶108}** Appellant argues the trial court erred in refusing to merge the two convictions in violation of R.C. §2941.25, which states the following:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate

animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶109}** In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, syllabus, the Supreme Court of Ohio held:

    1.     In determining whether offenses are allied offenses of similar import within the meaning of R.C. 2841.25, courts must evaluate three separate factors - the conduct, the animus, and the import.

    2.     Two or more offenses of dissimilar import exist within the meaning of R.C. 2841.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

    3.     Under R.C. 2941.25(B), a defendant whose conduct supports multiple offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

**{¶110}** In paragraph 26 of the opinion, the *Ruff* court stated:

    At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or doing a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a

defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable. *Id.*

**{¶111}** Offenses that occur close in time and proximity may still "involve separate conduct for purposes of an allied offense analysis." *State v. Black*, 8th Dist. No. 102586, 2016-Ohio-383, 58 N.E.3d 561, ¶27, *discretionary appeal not allowed, State v. Black*, 145 Ohio St.3d 1461, 2016-Ohio-2807, 49 N.E.3d 322.

**{¶112}** In *State v. Boyd*, 8th Dist. Cuyahoga No. 109052, 2020-Ohio-5181, ¶45, *appeal not allowed*, 162 Ohio St.3d 1438, 2021-Ohio-1399, 166 N.E.3d 1258, ¶45, the defendant's acts of felonious assault and abduction arose close in time and proximity, were against the same victim, and even if they arose from same animus, the offenses were committed separately. After a failed attempt to kill his wife, committing felonious assault, she attempted to escape to the neighbor's house. The defendant then, committing abduction, knowingly used force to restrain the victim by dragging her by her neck back to their house. The defendant then tried to run his wife over with a car, committing a second felonious assault. The Eighth District Court of Appeals held Appellant's separate acts support the conclusion that the felonious assaults and abduction offenses are not allied offenses of similar import.

**{¶113}** In the case *sub judice*, although the felonious assault and abduction happened in close proximity and time, they were committed separately. Appellant beat and strangled the victim to the point she passed out, committing a felonious assault. Upon regaining consciousness, the victim escaped to the bathroom. Appellant then told the victim he would not beat her again if she remained in the bathroom, by threat, restraining the victim's liberty, committing the crime of abduction. Therefore, these two offenses do not merge as they were committed separately. Appellant's separate acts support the trial court's finding that the felonious assault and abduction offenses are not allied offenses of similar import.

**{¶114}** Appellant's First Assignment of Error is overruled.

**VI.**

**{¶115}** Appellant's Sixth Assignment of Error summarily challenges the constitutionality of the Reagan Tokes Act, which codified hybrid indefinite prison terms for first- and second- degree felonies. Appellant generally alleges that indefinite sentences giving ODRC "the role of judge, jury, and executioner" violates the right to due process and the separation of powers doctrine. Appellant's brief 15.

**{¶116}** This Court has previously found this type of challenge to not yet be ripe for review. *State v. Downard*, 5th Dist. Muskingum, CT2019, 2020-Ohio-4227, *appeal allowed*, 160 Ohio St.3d 1507, 2020-Ohio-6835, 159 N.E.3d 1152. However, the Ohio Supreme Court found that the issue of the constitutionality of an indeterminate sentence imposed under R.C. §2967.271 ripens at the time of sentencing and that the law may be challenged on direct appeal. *State v. Maddox*, 2022-Ohio-764, ¶21.

**{¶117}** As the challenge is ripe for review, this Court looks to analyze Appellant's argument, analysis and support. Appellant summarily argues that his indefinite prison term violated due process and separation of powers. His argument lacks any specific reference to the record or citations to legal authority in support of an argument. *See, State v. Gulley*, 5th Dist. Stark No. 2006CA00114, 2008-Ohio-887, ¶12.

**{¶118}** Appellant has the burden of demonstrating an error on appeal. *See*, App.R. 16(A)(7). "It is the duty of the appellant, not this court, to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record." *State v. Untied*, 5th Dist. No. CT2006-0005, 2007-Ohio-1804, at ¶141. *See, also*, App.R. 16(A)(7).

**{¶119}** The constitutionality of indefinite sentencing has previously been challenged on several bases, but we are not at liberty to make Appellant's arguments for him. "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *State v. Romy*, 5th Dist. Stark No. 2020 CA 00066, 2021-Ohio-501, 168 N.E.3d 86, ¶35, citing *Thomas v. Harmon*, 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, ¶14. Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Id.*, citing *Frye v. Holzer Clinic, Inc.*, 4th Dist. Gallia No. 07CA4, 2008-Ohio-2194, ¶12; *see, also,* App.R. 16(A)(7); App.R.12(A)(2).

**{¶120}** Appellant's Sixth Assignment of Error is overruled.

**{¶121}** For the foregoing reasons, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby, affirmed.


By: Wise, John, J.

Wise, Earle, P. J., and

Gwin, J., concur.


JWW/br 0411